IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER EDWARD HALL, #225628 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. DKC-06-2983 |
| TYRONE D. CROWDER | * | |
| SIMON T. WAINWRIGHT | | |
| ZERABRUCK TEWELDE, MD | * | |
| DR. LUKA | | |
| DR. ASRESAHEGN GETACHEW | * | |
| CAPTAIN E. MCFARLINE | | |
| NURSE ATKINS | * | |
| DR. CHERRELLE REDDICK-LANE | | |
| NURSE O'DALEY | * | |
| Defendants. | | |
| | ***** | |

**MEMORANDUM**

I.   *Background*

On November 13, 2006, the instant 42 U.S.C. § 1983 action was received for filing. Plaintiff, an inmate confined at the Maryland Correctional Adjustment Center ("MCAC"), raises a number of claims against Division of Correction and medical personnel for alleged mail destruction[1] and denial of medical care.[2]  Paper No. 1. The case was originally placed on inactive/unassigned status due to Plaintiff's litigiousness. It was reactivated and reassigned on April 18, 2007, in light of Plaintiff's Rule 65(a) relief request with regard to his medical concerns.[3]

II.   *Dispositive Filings*

---

[1]   Plaintiff also voiced a brief complaint about his placement on special management meals.

[2]   On April 10, 2007, a supplemental complaint was received for filing. Paper No. 6.

[3]   After briefing, on May 30, 2007, the order to show cause was quashed and injunctive relief was denied. Paper No. 13.

On September 14, 2007 and October 19, 2007, Defendants Reddick-Lane, Tewelde, Luka, Getachew, Crowder and Wainwright filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. Paper Nos. 27 & 32.   The motions remain unopposed and may be determined on the pleadings without oral hearing.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, are hereby granted.

III.     *Standard of Review*

Summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete

failure of proof concerning an essential element...necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D. N.C. 1966)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

IV.     *Analysis*

   *Mail Tampering*

Plaintiff alleges that a § 1983 complaint, mailed to this court on September 29, 2006, was never received. Due process requires that convicted inmates have access to the courts to pursue direct criminal appeals, file habeas petitions, or file civil rights actions "to vindicate 'basic constitutional rights.'" *Lewis v. Casey,* 518 U.S. 343, 354 (1996) (quoting *Wolff v. McDonnell,* 418

3

U.S. 539, 579 (1974)). In *Bounds v. Smith,* 430 U.S. 817 (1978), the Supreme Court defined access to the courts for prisoners as "meaningful access." *Bounds,* 430 U.S. at 830. This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. The *Casey* decision, however, indicated that "*Bounds* established no such right....The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." *Casey,* 518 U.S. at 350. The *Casey* decision distanced itself from the more expansive *Bounds* decision, finding that *Bounds* "appear[s] to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court....These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them." *Casey,* 518 U.S. at 354 (emphasis added). The *Casey* court went on to say that *Bounds* "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The "touchstone," according to *Casey,* is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. Under *Casey*, access to courts is denied when circumstances adversely affect a confined person's ability to actively proceed with litigation.

Plaintiff complains that he mailed out a § 1983 complaint on or about September 29, 2006, and it was not received by this court. He names Defendant Wainwright, Crowder, and Captain McFarline as state Defendants, but does not discuss how these Defendants were personally involved.

4

Further, under *Casey* access to courts is denied when circumstances adversely affect a confined person's ability to actively proceed with litigation. *See Casey,* 518 U.S. at 354. Plaintiff does not show how the alleged loss of his complaint in this once instance caused him actual injury in his ability to litigate his case.[4] The court finds no due process violation based upon the claims presented here.

*Medical Care*

As a inmate sentenced to confinement, Plaintiff is entitled to receive reasonable treatment for serious medical needs. Plaintiff must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, Plaintiff must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

---

[4] It appears that Plaintiff's Supplemental Complaint does contain a 42 U.S.C. § 1983 complaint form, dated September 28, 2006. (Paper No. 6). It may be that this is the alleged missing complaint. If not, Plaintiff was plainly free to re-file the pleading with the court.

Based upon a review of the Complaint and the materials presented by Defendants, it is clear that Plaintiff has failed to show that prison and medical personnel failed to evaluate or were otherwise indifferent to his medical needs. The unrefuted facts as presented by Defendants with regard to Plaintiff's care are as follows:

Plaintiff is a 41-year old male with a history of an adjustment disorder with mixed anxiety and depressed mood, hypertension, and degenerative joint disease. He has also voiced subjective claims of rectal bleeding which have not been objectively established. In September of 2006, a prison physician ordered a screening colonoscopy and stool sample to check for occult blood because of Plaintiff's reported family history of colon cancer. No stool specimens were obtained and tested, however, because Plaintiff was unable or unwilling to provide one. The order for a screening colonoscopy was countermanded by another physician due to the lack of objective evidence of gastrointestinal bleeding.[5]

In November of 2006, Plaintiff was admitted to the University of Maryland Medical System for evaluation and treatment after swallowing a screw, small pieces of broken light bulb, a hook, a small spring, and thirty pills he said he used for sleeping. He informed physicians about his family history of colon cancer, but only mentioned his father, not his brother. There is no record that he requested a test for colon cancer while hospitalized. After his discharge from the hospital, Plaintiff was observed in the prison infirmary from November 23, 2006, to December 17, 2006. His condition was stable and he showed no signs or symptoms of abdominal bleeding or obstruction.

On December 31, 2006, Plaintiff was admitted to Mercy Medical Center for observation and treatment after swallowing a razor. Except for some blood-tinged phlegm, he exhibited no other

---

[5] According to the staff physician at MCAC, for patients under 50 years of age, even with a family history of colon cancer, the first step is to test for occult blood in the stool and then, if that test is positive, the patient will undergo a colonoscopy.

6

signs of gastrointestinal bleeding or abdominal pain. He did not tell hospital staff that he had a family history of colon cancer and he signed out of the hospital against the advice of medical personnel to return to MCAC. On January 14, 2007, he was evaluated at University of Maryland Medical System Emergency Department after he reportedly swallowed a razor. The x-ray performed revealed a foreign body in his colon consistent with a single or multi-blade razor, with no evidence of a bowel perforation. A recommendation was made for a repeat x-ray and the monitoring of Plaintiff's stools to see if he passed the razor blade. Plaintiff was released from the hospital and returned to MCAC.

Two days later, on January 19, 2007, Plaintiff reported to the nurse that he swallowed a razor and a nail at 2:00 a.m., and another razor and another nail at approximately 4:00 a.m. The nurse examined Plaintiff and noted no cuts in his mouth or his tongue. His sputum was clear with no sign of blood. An abdominal x-ray and psychiatric consult was ordered. Because Plaintiff was hemodynamically stable, the physician discontinued the x-ray, but she agreed with the psychiatric consultation. Plaintiff eventually passed these swallowed objects in his stool and exhibited no objective signs of any gastrointestinal bleeding.

On March 14, 2007, Plaintiff told a prison nurse that he swallowed some sleeping pills. His vital signs were within normal limits and he showed no adverse effects from the medication. Plaintiff refused offered Ipecac syrup, had no further complaints, and was taken back to his cell.

In light of Plaintiff's statements regarding his family history of colon cancer, on May 9, 2007, he was called to the MCAC dispensary by a physician so that she could get a more detailed history. Plaintiff refused to visit the dispensary to speak with the physician. On June 1, 2007, Plaintiff refused to allow Dr. Reddick-Lane to perform a rectal examination to test for occult blood. On June 14, 2007, he was admitted to the infirmary for management of uncontrolled diabetes

mellitus. A gastroenterology consult was approved for Plaintiff to undergo a colonoscopy. On June 16, 2007, Plaintiff again refused a rectal examination. On June 19, 2007, Plaintiff's stools tested positive for occult blood. The following day, however, he tested negative for occult blood.

On July 17, 2007, Plaintiff was ordered to drink a liquid in preparation for a colonoscopy. He refused to consume the drink  Nonetheless, on July 18, 2007, Plaintiff underwent a colonoscopy at Bon Secours Hospital. The colonoscopy showed only diverticulitis, with no sign of colon cancer. Dr. Reddick-Lane ordered a dietary consultation to devise a high fiber diet for treatment of Plaintiff's diverticulitis.

The record shows that Plaintiff has been examined a number of times by prison and hospital medical care staff due in part to frequent incidents of ingesting foreign bodies, yet no objective signs of rectal bleeding were found. Further, Plaintiff's hemoglobin and hematocrit levels have been tested numerous times and found to be within normal limits. The medical record illustrates that since 2006, Plaintiff has five times refused rectal examinations, at least once refused an abdominal x-ray, been non-compliant with pre-exploratory surgery procedures, and has generally been uncooperative with prison and hospital medical staff in their attempts to obtain a complete case history and objective data through evaluation and occult stool testing. Occult testing proved positive in June of 2007 and Plaintiff underwent a colonoscopy the following month. No evidence of cancer was found. Plaintiff has been referred to a dietitian to devise a high fiber diet in light of his diagnosed diverticulitis

Plaintiff's allegation that he has not received appropriate treatment for colon cancer is belied by the record before the court. Defendants are entitled to judgment as to this issue.[6]

---

[6] In a complaint attachment Plaintiff makes reference to "retaliation" with regard to Defendant Crowder's decision to place him on a special management meal or "food loaf" in May of 2006. Defendants do not respond to this claim. The court observes, however, that Plaintiff previously raised the same allegation

V. *Conclusion*

For the aforementioned reasons, Defendants' Motions for Summary Judgment shall be granted.[7]  A separate Order follows.


Date: November 21, 2007                               /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge

---

against Defendant Crowder in *Hall v. Peay, et al.*, Civil Action No. DKC-06-2545 (D. Md.).  The court concluded that: (1) Plaintiff had failed to show that he was subject to an extreme deprivation and that he suffered any injury resulting from his placement on food loaf at MCAC; (2) healthcare providers had determined that there was no reason why Plaintiff could not be placed on special management meals; and (3) there was no showing that decisions affecting Plaintiff's placement on food loaf were implemented in a manner that suggested discrimination or retaliation.  Indeed, the court concluded that the recommendations of MCAC staff regarding Plaintiff's special management meals were directly linked to his behavior and infractions.  *See Hall v. Peay, et al.*, Civil Action No. DKC-06-2545 (D. Md.) at Paper No. 20.  The court shall not revisit this claim here.

[7]   In light of this decision, the complaint against Defendants McFarline, Atkins, and O'Daley shall be dismissed.